# ZELDES, NEEDLE & COOPER

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
1000 LAFAYETTE BLVD.
POST OFFICE BOX 1740
BRIDGEPORT, CONNECTICUT 06601-1740

TELEPHONE (203) 333-9441
FAX (203) 333-1489

JACOB D. ZELDES
(1929-2013)

May 18, 2015

Hon. Leonard D. Wexler
Senior United States District Court Judge
U.S. District Court
944 Federal Plaza
Central Islip, New York 11722

Re: <u>Nicole Beltrez v. Credit Collection Services, Inc.</u>
U.S. District Court, Eastern District of New York
No. 2:14-CV-07303-LDW-AKT

Dear Judge Wexler:

I represent Credit Collection Services, Inc. ("Defendant") in the above matter brought by Nicole Beltrez ("Plaintiff"). In accordance with your individual rules of practice, I write to request a pre-motion conference with respect to a dispositive motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) proposed to be filed by Defendant.

Plaintiff's Complaint sets forth five counts under the FDCPA, based upon a single collection letter (the "Letter") sent to collect a $21.83 balance on a Verizon telephone service account, and one count under New York State law (NYGBL §349).

Count I alleges that the Letter fails to disclose the creditor to which the debt is owed. The Letter references a past due balance in the amount of $21.83 "RE: VERIZON" and it asks that payment be made to Verizon at a specified address. Plaintiff acknowledges in her pleading that the Letter comes from Defendant, Credit Collection Services (Complaint ¶ 8), and the Letter identifies Defendant as a "debt collector."

In conclusory fashion, Plaintiff alleges that one cannot discern the identity of the creditor, suggesting that the creditor might be any number of entities other than Verizon, including WarningNotice.com and Defendant. The Letter in question plainly describes WarningNotice.com as the debt collector's secure website, and the website itself provides further explanation of its purpose and use. Similarly, the Letter describes WarningNotice.com as a place where a consumer can activate various service options, including (i) paying online, (ii) making payment arrangements, (iii) printing scheduled payment vouchers, (iv) entering proof of payment and (v) accessing help desk information. The Letter cannot be interpreted, even by

ZELDES, NEEDLE & COOPER
A PROFESSIONAL CORPORATION

May 18, 2015
Page 2

a least sophisticated consumer, to suggest that this websites is the creditor, or that Defendant is the creditor as opposed to the debt collector.

The FDCPA is based on the fundamental premise that "every individual, whether or not he owes [a] debt, has a right to be treated in a reasonable and civil manner." *Cirkot v. Diversified Financial Systems, Inc.*, 839 F. Supp. 941, 944 (D. Conn. 1993) (referring to the remarks of Representative Frank Annunzio, 123 Cong. Rec. 10241(1977)). Defendant does not contest this principle, but notes that the FDCPA must also leave room for legitimate, ethical debt collection activity. The purpose of the FDCPA is to protect consumers from unfair, deceptive and harassing debt collection practices, while leaving collectors <u>free to employ efficient, reasonable and ethical practices</u> in pursuit of their profession. *Graziano v. Harrison*, 763 F. Supp. 1269 (D. N. J.), *modified on other grounds*, 950 F.2d 107 (3rd Cir. 1991) (emphasis added); *Johnson v. NCB Collections, Inc.*, 799 F. Supp. 1298 (D. Conn. 1992); *Beattie v. DM Collections, Inc.*, 754 F. Supp. 383 (D. Del. 1991) (FDCPA does not preclude nonabusive statements to encourage payment).

Claims under the FDCPA are evaluated under the "least sophisticated consumer" standard. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). However, not all collection efforts violate the rights of the least sophisticated consumer. "Even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* "Courts ordinarily incorporate an element of reasonableness into even the 'least sophisticated debtor.' " *Id.* at 1319-20. The FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor. *Greco v. Trauner, Cohen & Thomas*, 412 F.3d 360 (2d Cir. 2005); *Rosa v. Gaynor*, 784 F. Supp. 1, 7 (D. Conn. 1989). The mere fact that collection activity is unwanted by the debtor does not equate to a violation.

In order for the FDCPA to fulfill its intended purposes, courts must strike a balance between providing protection to consumers from improper and offensive collection tactics and allowing the collection industry, in a reasonable and efficient manner, to perform its essential function in our economy. Debt collectors should not be subject to litigation merely because their task is to collect a debt. Accordingly, in construing the FDCPA courts should be mindful of its legitimate purposes, and aware of its potential abuses. *See, e.g., Lindbergh v. Transworld Systems, Inc.*, 846 F. Supp. 175, 180 (D. Conn. 1994) (Cabranes, J.) (The court rejected an argument under the FDCPA because it reflected "a false, narrow and overly mechanical reading of the FDCPA."). The FDCPA is not designed to enable consumers to eliminate the legitimate but adverse consequences of non-payment of debt. *See Catherman v. Credit Bureau of Greater Harrisburg*, 634 F. Supp. 693 (E.D. Pa. 1986); *Wright v. Credit Bureau of Georgia*, 555 F. Supp. 1005 (N.D. Ga. 1983) (fact recognized by all consumers is that a failure to pay one's bills will affect ability to obtain credit in the future).

In *Jacobson v. Healthcare Financial Services, Inc.*, 434 F.Supp. 2d 133, 137 (E.D.N.Y. 2006) *aff'd in part, vac'd in part, rev'd in part*, 516 F. 3d 85 (E.D.N.Y. 2008), Judge Glasser made a number of observations about the extraordinary proliferation of the FDCPA claims in the courts, a pattern which has continued since 2006 to the present.

Judge Glasser noted, "Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the

ZELDES, NEEDLE & COOPER
A PROFESSIONAL CORPORATION

May 18, 2015
Page 3

individual who has been threatened or misled," enabling a class of professional plaintiffs. Judge Glasser continued, "The statute need not be applied in this manner, and indeed [the Second] Circuit has recognized that courts should not countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." *Id.* If the purpose of the statute is equally "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," and if the courts are to give life to the admonition in *Clomon* that the standards are intended to protect collectors against "bizarre or idiosyncratic interpretations of collection notices," *Clomon*, 988 F.2d at 1320, the statute must be applied with some circumspection.

Plaintiff's claims are baseless as a matter of law and do not serve the legitimate purposes of the FDCPA. Defendant's collection efforts involve no abuse, harassment or deception of Plaintiff, and Defendant provided all of the required disclosures in pursuit of amounts placed with it for collection.

Count I of the Complaint sets forth only legal conclusions that are precisely the type of unreasonable "bizarre and idiosyncratic" interpretations of a letter from which the collector deserves protection under the FDCPA. *See Jacobson*, 434 F. Supp.2d at 137; *Quamina v. Retrieval Masters Creditors Bureau, Inc.*, 2011 WL 1099483 (E.D.N.Y. 2011).

In Count II, Plaintiff alleges a violation of 15 U.S.C. § 1692e and several of its subsections based on the inclusion of the very language required under 15 U.S.C. § 1692g(a)(4). The Letter states "if you notify this office in writing within 30 days after receiving this notice, this office will obtain <u>verification of the debt or a copy of a judgment</u> and mail you a copy of such judgment or verification." *See* 15 U.S.C. § 1692g(4). To Defendant, it seems that there can be no better example of a "bizarre or idiosyncratic" interpretation of a collection letter than one that claims that a required disclosure stated in one section of the FDCPA violates another section of the FDCPA, especially when the Letter tracks the statutory language almost verbatim. Lastly, the required disclosure provides for "verification of the debt <u>or</u> a copy of a judgment." 15 U.S.C. § 1692g(a)(4) (*emphasis added*). It does not misrepresent that a judgment exists. Lastly, Count II reflects conclusory allegations inadequately supported by facts so as to assert even a "plausible" claim under the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny.

Count III alleges that the Letter misrepresents the creditor's participation in the collection of the debt in violation of 15 U.S.C. § 1692j. Complaint ¶ 27. "An outside company violates Section 1692j(a) of the FDCPA if it has assisted the creditor in deceiving the least sophisticated consumer by designing, compiling, or furnishing any form knowing that such form would be used to create the false belief in a consumer that a person <u>other than the creditor</u> of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." *Weber v. Goodman*, 9 F.Supp.2d 163, 168 (E.D.N.Y.1998) (internal quotation marks omitted) (*emphasis added*); *see also* 15 U.S.C. § 1692.

No such facts are alleged or exist here. Defendant is in fact participating in the collection of the Verizon debt. The Letter states clearly that "[y]our account was previously listed with another collection firm and re-assigned to this office to administer recovery." The Complaint does not allege that Defendant designed, compiled or furnished a form to Verizon,

ZELDES, NEEDLE & COOPER
A PROFESSIONAL CORPORATION

May 18, 2015
Page 4

but instead alleges in conclusory manner that Defendant's "letter indicating that Verizon is somehow involved in the participation of the collection of this debt violates Section 1692j of the FDCPA". Plaintiff's allegations fail to allege a "plausible" claim under Section 1692j.

Count IV purports to assert a claim under § 1692f. This count, however, identifies no conduct that is not covered by other sections of the FDCPA in the other counts. Consequently, Count IV is "deficient in that it does not identify any misconduct beyond that which [Plaintiff] assert violate other provisions of the FDCPA." *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643, 667 (S.D.N.Y.2006) (*citing Tsenes v. Trans-Cont'l Credit and Collection Corp.*, 892 F.Supp. 461, 466 (E.D.N.Y.1995) (holding that the "Complaint is devoid of support for the contention that the defendant engaged in practices that were 'unfair' or 'unconscionable' within the meaning of the section; all the allegations in the Complaint support claims asserted under §§ 1692g or 1692e.")).

Count V asserts a claim under NY General Business Law § 349. Section 349 "is directed at wrongs against the consuming public." *Cyphers v. Litton Loan Servicing, L.L.P.*, 503 F.Supp 547, 552 (N.D.N.Y. 2007). In order to establish such a claim Plaintiff "must demonstrate that the [Defendant's] acts or practices have a broader impact on consumers at large." *Id.* Count V contains nothing more than conclusory allegations devoid of any facts necessary to sustain a claim under Section 349.

As a result of the foregoing, Plaintiff has failed as a matter of law to assert any cognizable claim. Judgment should enter in favor of Defendant.

Respectfully submitted,

Michael A. Carbone

cc: David M. Barshay, Esq.